SLR:LDM:MDH
F.# 2013V00003

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

              Plaintiff,

          – against –

APPROXIMATELY FIFTY THOUSAND
DOLLARS AND NO CENTS ($50,000.00)
IN UNITED STATES CURRENCY,
FORMERLY ON DEPOSIT IN TD BANK
ACCOUNT NUMBER 4258721351 HELD
IN THE NAME OF CELLNET7, INC.,
AND ALL PROCEEDS TRACEABLE
THERETO,

           Defendant *In Rem*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**AMENDED VERIFIED COMPLAINT**
***IN REM***

Civil Action No. 13-CV-2931 (JG)

       Plaintiff, United States of America, by its attorney, Loretta E. Lynch, United States Attorney for the Eastern District of New York, Melanie D. Hendry, Assistant United States Attorney, of counsel, alleges upon information and belief as follows:

**PRELIMINARY STATEMENT**

       1.     This is a civil action *in rem* to forfeit and condemn to the use and benefit of the United States the above-captioned defendant *in rem* (the "Defendant Funds"), approximately $50,000.00 in United States currency, formerly on deposit in TD Bank account number 4258721351 held in the name of Cellnet7, Inc. (the "Subject Account"), and all proceeds traceable thereto.

       2.     The Defendant Funds are subject to forfeiture to the United States in accordance with (a) 21 U.S.C. § 881(a)(6) as monies furnished or intended to be furnished in

exchange for a controlled substance, or money used or intended to be used to facilitate a controlled substance offense, and (b) 18 U.S.C. § 981(a)(1)(A), as property involved in money laundering activity in violation of 18 U.S.C. §§ 1956 or 1957.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.      Venue lies in the Eastern District of New York pursuant to 28 U.S.C. §§ 1355 and 1395 in that the Defendant Funds are found in the Eastern District of New York.

## STATUTORY BACKGROUND

5.      Pursuant to 21 U.S.C. § 881(a)(6), all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Title 21, Subchapter I of the United States Code, or proceeds traceable to such an exchange, or money used or intended to be used to facilitate a controlled substance offense, are subject to forfeiture to the United States.

6.      Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, which is involved in a transaction or attempted transaction in violation of federal money laundering laws, 18 U.S.C. §§ 1956 or 1957, and any property traceable thereto, is subject to forfeiture to the United States.

## BLACK MARKET PESO EXCHANGE

7.      Narcotics traffickers amass large cash proceeds from the sale of narcotics in the United States. The traffickers, or those associated with the traffickers, frequently attempt to give the impression of legitimacy to these profits; *i.e.*, to "launder" them, by making the profits appear to have been generated by a legitimate source. The traffickers must also devise

2

various methods to remit those narcotics proceeds to suppliers of narcotics located in Colombia, Honduras, and other South and Central American countries which are known source locations of narcotics, without alerting governmental or law enforcement agencies in either country.

8.      In order to accomplish this goal, narcotics traffickers frequently utilize domestic and foreign banks and/or financial institutions in order both to make their narcotics profits appear to be from legitimate sources and to move those profits through the financial system into the countries where narcotics are produced.

9.      A popular method to launder narcotics proceeds is for narcotics traffickers, through a third party, to "sell" their narcotics proceeds in the United States for pesos in Colombia. This practice, commonly known as the Black Market Peso Exchange ("BMPE"), is centered on a BMPE broker who can bring the drug dollars and the legitimate pesos together.

10.     In a common BMPE scheme, a BMPE broker will typically identify a South or Central American businessperson who imports goods from places such as the United States, China or Panama. The BMPE broker will generally offer the South or Central American businessperson an opportunity to pay the debt owed to the exporter in the foreign country at a significant discount compared to the cost of making the payment through a South or Central American bank. The South or Central American business person who agrees to this scheme will then turn over the payment for the imported goods in the form of pesos to the BMPE broker who will subsequently contact a Drug Trafficking Organization ("DTO"). When the BMPE broker contacts the DTO, the broker will offer the pesos in South or Central America in exchange for the narcotics proceeds that are located in the United States.

11.     The BMPE broker will then arrange to have the narcotics proceeds picked up by a member of the BMPE broker's organization. These money pick-ups will usually occur

3

on a street corner or parking lot between two people who have never met before and will most likely never meet again. These pick-ups frequently involve several hundred thousands of dollars in narcotics proceeds.

12.    Following a money pick-up, the BMPE broker arranges to forward those funds to the exporter in the United States to pay the debt of the South or Central American businessperson. This can be accomplished by remitting those funds directly to the exporter, either through money orders or by depositing the narcotics proceeds directly into an account held by the exporter.

## FACTS

13.    In or around 2012, the United States Department of Homeland Security ("DHS") commenced a money laundering investigation targeting drug cartels involved in BMPE schemes. In connection with that investigation, DHS interviewed a confidential source (the "CS") who had come to the attention of law enforcement agents because the CS had wired United States currency from Honduras to companies in the United States.

14.    The CS advised law enforcement agents that he was paid by a man in Honduras (the "Honduras Broker") to open multiple United States dollar accounts in Honduran banks, deposit United States currency into those accounts, and wire that money pursuant to the Honduras Brokers' instructions. The Honduras Broker and his associates communicated with the CS by email regarding the financial transactions, including via email account angelcanales100@hotmail.com (the "Canales Email Account").

15.    On or about July 12, 2012, the Honorable Marilyn D. Go, United States Magistrate Judge, Eastern District of New York, issued a warrant authorizing the search of email messages contained in the Canales Email Account. A review of emails from the Canales Email

4

Account obtained from this search revealed hundreds of email messages relating to the transfer

of United States dollars from bank accounts in Honduras to bank accounts in the United States

and Asia. Further, the Canales Email Account contained attachments to email messages which

included spreadsheets detailing the amount of money sent through the bank accounts of various

Honduran entities. Subscriber information concerning the Canales Email Account revealed that

the user of the account is located in Honduras.

    16. The Canales Email Account also contained evidence of numerous wire

transactions reflecting payments made by Honduran entities, including one called Coin SA, LLC,

also known as Corporacion de Inv Nacionales S.A. ("Coin"), to various businesses located in the

South Florida metropolitan area, an area that is known to have a large number of companies

involved in the BMPE.

    17. Cellnet7, Inc. ("Cellnet7") is a wholesale cellular telephone distributor

located at 1428 NW 82nd Avenue, Miami, Florida 33126. Cellnet7 is one of the South Florida

entities identified in email communications as receiving wire transfers from Coin.

    18. The search of the Canales Email Account further revealed an email dated

November 12, 2011, which contained the instructions for transfers of United States dollars from

a Honduran bank account into five United States business accounts. One of these transfers was

into Cellnet7's account. That email contained the following text:

> #7
> BANK NAME – TD BANK
> ADDRESS BANK: 3885 NW 107 AVENUEDORAL, FL 33178
> TEL. 305-4995011
> NAME BENEFICIARY: CELLNET7 INC.
> ACCOUNT # 4258721351
> ADDRESS BENEFICUARY: 1428 NW 82 AVE MIAMI, FL
> 33126
> 305-436-1409
> Swift – NRTHUS33

ABBA – 067014822
Valor: 50.000

19.    The Canales Email Account also contained an email dated December 6, 2011, which confirmed that the requested transfer had taken place. That email, with the subject line "Confir#7 Cellnet7," contained a scanned confirmation showing that $50,000.00 was wired from the Honduras bank account into CellNet7's United States bank account on or about December 5, 2011. The confirmation listed the customer that ordered the wire transfer as COIN with an address in Honduras.

20.    Despite this wire activity, Cellnet7 did not export any goods to Honduras during the period 2011 to the present.

21.    Following seizure of the Defendant Funds, Cellnet7 provided bank records, invoices, and a statement which purportedly memorialize the transactions for which the Defendant Funds were intended to be payment. Notwithstanding the fact that the bank records concerning the wire transfer identify COIN as sender of the Defendant Funds and include a Honduras address for COIN, the statement and invoices identify the customer as "ARC IMPORTADORES" with a Colombian address.

22.    On or about October 11, 2012, DHS seized the Defendant Funds pursuant to a seizure warrant issued by United States Magistrate Judge Ramon E. Reyes, Jr. on or about October 3, 2012.

23.    On or about November 15, 2012, Cellnet7 was notified by U.S. Customs and Border Protection ("CBP") of the seizure of the Defendant Funds.

24.    On or about December 17, 2012, CBP received a written request from Cellnet7's attorney asking that the case be referred for judicial proceedings.

6

## FIRST CLAIM FOR RELIEF
### (Property Involved in Money Laundering)

25.    Plaintiff repeats the allegations of paragraphs 1 through 24 as if fully set forth herein.

26.    The Defendant Funds constitute property involved in money laundering activity in violation of 18 U.S.C. §§ 1956 or 1957.

27.    As such, the Defendant Funds are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR RELIEF
### (Property Traceable to Sale of Controlled Substance)

28.    Plaintiff repeats the allegations of paragraphs 1 through 24 as if fully set forth herein.

29.    The Defendant Funds constitute money, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to such an exchange, or money used or intended to be used to facilitate a violation of Title 21 of the United States Code.

30.    As such, the Defendant Funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, plaintiff United States of America requests that a warrant of this Court be issued for the arrest of the Defendant Funds; that notice of these proceedings be given to all interested persons; that the Defendant Funds be forfeited and condemned to the use of the United States; that the Plaintiff be awarded its costs and disbursements in this action; and for

7

such other and further relief as the Court may deem just and proper.

Dated: Brooklyn, New York
      June 10, 2013

                                   LORETTA E. LYNCH
                                   UNITED STATES ATTORNEY
                                   *Attorney for Plaintiff*
                                   Eastern District of New York
                                   271 Cadman Plaza East
                                   Brooklyn, New York 11201

                By:      *Melanie D. Hendry*
                            Melanie D. Hendry
                            Assistant United States Attorney
                            (718) 254-6040

8

## VERIFICATION

1.     I am a Special Agent with the Department of Homeland Security, and, as such, have knowledge of the facts underlying this action.

2.     I have read the within amended verified complaint *in rem* and know the contents thereof.

3.     The matters contained in the within amended verified complaint *in rem* are true and accurate to the best of my knowledge, information and belief.

4.     The source of my information and the grounds for my belief are my personal knowledge, information provided by other law enforcement officers, and the official files and records of the DHS and other law enforcement agencies.

I declare under penalty of perjury that the foregoing is true, to the best of my knowledge, information, and belief.

Dated: Brooklyn, New York
        June  7 , 2013


                                        Derek Amalbert
                                        Special Agent
                                        Department of Homeland Security